In this case number 4-16-0226, People v. Boitnott, for the defendant is attorney John McCarthy and for the state is attorney David Manchin. Good afternoon, Mr. McCarthy. Your honors, counsel, may it please the court, my name is John McCarthy and I'm from the Office of the State of Public Defender. I represent Thomas Boitnott. I'll admit up front, the general rule in Illinois is that a trial judge has the authority to disregard the findings of a psychiatrist. However, we know this is the law and there are exceptions to every rule. I believe this case falls into exception for two reasons. First, I have never read a case where a judge disregarded a psychiatrist with a psychiatrist at the volume of timely information that this one did. He had interviews with people in the weeks leading up regarding Thomas' strange behavior, his lack of sleep, denying his name. He had access to 911 tape where Kayla calls in and says, Thomas has taken my baby and he has mental health issues. He had the police investigation. He had the interrogation. And from the day after, the day he was placed in jail, the Champaign County mental health people were monitoring Thomas' actions. Dr. Jekyll talked to him within two weeks of the event, another time within three weeks of the event. Thomas then went to Chester Mental Health Center where he stayed for 10 weeks. He had access to all those. So, counsel, those are all good arguments, but why are they an exception to the rule? And the point is, that alone, I think you're correct, that alone would not be enough to overcome the general rule. It's the second problem that I think overcomes the general rule. And that's the fact that when, oh, I would like to make one more point on that. The state looked at this evidence, too, and they were willing to enter into a stipulated bench trial. And one of those stipulations was that Thomas was not guilty by reason of insanity. Now, I know that's not proper. Judge Tifanis knew that wasn't proper. And he told him, if you want to do a guilty plea, do a guilty plea. If you want a stipulated bench trial, I'm the one who's going to make the decision. And gave him 15 minutes to figure it out. Was that a plea offered by the state? Not guilty by reason of insanity? Or was that just a proposed stipulation for a bench trial? They stipulate. Yes, for a stipulated bench trial. I would have to speculate on why they wanted to negotiate a guilty plea if they were willing to stipulate he was not guilty by reason of insanity. You're saying it wasn't? It was not. A plea offered from the state. I do not believe it was. Okay. But after 15 minutes, Judge Tifanis returns to the courtroom and asks the parties how they wanted to proceed. And then they said they wanted a stipulated bench trial. And Judge Tifanis immediately issued his ruling. He relied heavily on the fact that Thomas was lucid because he invoked his Miranda rights on numerous occasions. He had three or four paragraphs where he talks about this. And he concludes, has the defendant proven by clear and convincing evidence that at the time of defense he lacked substantial capacity to appreciate the criminality of his conduct? He invoked counsel 11 times. That's what makes this case different. That is not a proper reason to find somebody mentally competent. The Illinois Supreme Court has said so. I believe there was a Massachusetts Supreme Court case that said being psychotic doesn't mean you're stupid. You're still able to think. You're still able to act. The other factors that Judge Tifanis looked at is, for example, certain instances where Thomas was denying his name like he had been for several months. And then he would, as he said, slip and say his name was Thomas. Well, you have to understand that a psychotic split is not a linear event. You have things, you have a fight going on inside your mind between what you know and what you don't know. The second thing is, he also focused on the fact that he felt he lied about where Baby Carmen was because he was able to draw a map when Randy Rosenbaum showed up, who, by the way, is the hero of the show, because he was able to get him to draw a map and they were able to find the baby and she didn't die. But the fact that he's lying isn't the issue. The issue is, why is he lying? Is he lying to protect himself from criminal responsibility or is he lying to keep the evil forces away from Baby Carmen? And I think the interaction between the police and Randy Rosenbaum, I think, tells the story. The police are part of the evil. They're not on Thomas' team. They're part of the evil he's trying to protect Baby Carmen from. That's why he repeatedly says, I want to see a lawyer. Give me a lawyer. I want to see a lawyer now. And then when Randy Rosenbaum, because he knows. If it's his lawyer, he's going to help him out. He's going to do what's right for him and Baby Carmen. That's why Randy Rosenbaum was able to get him to draw a map to where Baby Carmen was, because he thought Randy was helping him. And he actually was. The other thing about these incidents that Judge DeFonis zeroed in on, they're addressed by Dr. Jekyll. He was strange and evasive when interviewed by police. He refused to give them the location of his daughter or even admit that he had a child. He irrationally equivocated with officers about his name. For example, denying his name was Thomas Boitnott. He denied knowing his father. This is consistent with a severe psychosis. So a trained psychiatrist is looking at the same materials that the judge was, which admittedly the judge can normally disregard, but not when he's relying on improper standard. Even if this court disagrees with me, I think my client at least deserves a remand for a new trial due to the trial procedures that happened in this case. When Judge DeFonis told the parties to talk amongst themselves and decide whether it's a guilty plea or if it's not guilty by reason of insanity or if it's a stipulated bench trial, he started to deliberate. He apparently reviewed 125 pages worth of police reports. Explain, what do you mean, started to deliberate? He had to start to deliberate or he couldn't have come right back in and delivered his verdict. Give me the time sequence of what you're talking about here. The Judge DeFonis gives a 15-minute recess for the parties to decide whether it's a guilty type plea or a stipulated bench trial. Okay. He comes back into the courtroom and they say, we want a stipulated bench trial. And immediately after they say that, he enters into his reasonings behind his verdict. He could not have done that unless he went back and read all the documentation or he wouldn't know the reasons. So he did that all in 15 minutes? I have a feeling when he did, he read Dr. Jekyll's report because that's probably the only piece of evidence he hadn't seen yet. And so in 15 minutes, I still think that's fraud. Well, I've got to admit I didn't pick that up from the record. So he says, counsel, decide how you're going to handle this. They come back in. They say, we're going to handle it with a stipulated bench trial. And then he announces his judgment. He starts going through his reasoning for his judgment and his judgment. And at the end of that... It strikes me that your best argument might be that the court did not allow a closing argument. I'd like to hear about that. And that's part of the argument. At the end of announcing his verdict, trial counsel says, Your Honor, he didn't allow me. I want to go on the record. He did not allow me to give a closing argument. As the United States Supreme Court has said, closing the argument might be one of the most important parts of the trial. That's where you can convince somebody who might be leaning one way to go the other way. One of the most famous examples of how powerful a closing argument can be is, if it doesn't fit, you must acquit. Now, I don't know if that swayed anybody or if they were already on that side, but everybody remembers that line. Now, I have no idea if my lawyer would have had a brilliant closing argument or not, but that's why we need to reverse it for a new trial. And if you do reverse it for a new trial, I believe the comments in the margins of the doctor's report would require this to go before another judge. And the reason is not that I believe Judge Tifanis could not fairly preside over a jury trial. I think he could. I don't think he's biased that way. The problem is it really takes away Thomas' right to any kind of bench trial, because judges are human, too. He's made up his mind what the outcome is. I don't think anything that the defense counsel could say now would change things. And I think, Thomas, given the nature of the case, it involves a toddler left in a field when it's raining, it's very hot, the child could have easily died. That's a difficult trial to take before a jury. And it was well-publicized in Champaign County. And that's the reason why I think it should go before a different judge, not because I think he couldn't do a jury trial. I think it takes away one of Thomas' comments. What would be the criteria, supposes the court agreed with you the new trial is required, for us to order a new judge preside upon remand? Excuse me, I don't understand. What authority do we have to do that? What criteria would we weigh to exercise that authority if we have it? I believe you have the authority, because it has happened before. It's just very rare instances when that occurs. We've done that before. What authority did we cite there? I think if there's indication that the judge used outside information in reaching a decision. We couldn't make that finding here. No, no, you can't. There's always cases of first impression. And I think, if I could just talk about a couple of comments, why I think it makes it impossible for him to preside over a bench trial. Dr. Jekyll reported recent remote memory intact except during the commission of the alleged offense. Judge Kifanis drew an arrow to Thomas recalling meeting a girl named Melissa on June 9th. Well, that's entirely consistent with exclamation points. That's entirely consistent with what Dr. Jekyll just said. He has remote memory. He just doesn't remember the time of the offense. He's talking about remembering an incident on June 9th. The events occurred on June 11th. But Judge Kifanis didn't look at it that way. And the next thing is, during a description of Dr. Jekyll's meeting with Thomas on 11-20-2015, five months after the incident, Judge Kifanis writes, now he is fine with exclamation points. Well, on November 20th of 2015, I hope he's fine because he's on medication designed to make him fine. So the other thing that bothers me about this case, and I don't know what you can do with it, I think Judge Kifanis came back. He wanted to prove what he told the parties. If we have a stipulated bench trial, I make the decisions. Because look at the other count. The parties stipulated Thomas Boytnot took Kayla's car without her permission. Not guilty. He totally ignored the stipulation of the parties. He was enforcing the fact that I'm the one who makes the decisions. If the court has no questions. I don't see any. Thank you, Mr. McCarthy. Thank you. We'll have time in rebuttal. Mr. Manchin. May it please the court, counsel. As far as reasonable doubt or the finding of guilty but minimally ill, the standard is whether the trial court's decision was manifestly erroneous. He's not required to accept the expert's opinion. And the expert's opinion is based primarily on what the defendant told him in two hours of conversations. The inferences drawn by the court that the defendant was faking this whole thing, was faking not knowing his name, faking not knowing his dad, was pretending to be insane, is a reasonable inference that could be drawn from this evidence, and he was not required to accept the expert's opinion to be contrary. So I think the trial court's verdict of guilty but minimally ill should be affirmed. There's simply no basis to say that the trial court, there's no evidence in the record that the trial court did anything in that 15 minutes between the time the parties tried to enter a stipulated verdict and the time they went to a stipulated bench trial. Well, then in the record, what does it indicate as to when Judge Tithonis reviewed the evidence? The stipulation was just simply that he could consider the police reports that had been filed, that he could consider the expert's opinion, and let me see if I can find what the exact stipulation was. But there's no showing in the record as to when that was done, as far as this being predetermined or just based upon his reading of the doctor's reports. And again, I'm just trying to understand the sequence of events. As I understood it, as Mr. McCarthy was explaining it, counsel were there talking about what they wanted to do. Judge Tithonis indicated it's either going to be a plea or a stipulated bench trial. What happened was the parties presented the information to the judge prior to the hearing, and then they came forward and there was an uncertainty as to whether it was a stipulated bench trial or if it was actually a guilty plea or a plea to guilty but mentally ill. And before this hearing, the parties had given the courts the information that was going to be relied upon in the stipulation. That's the part I wanted to find out. So these materials had been provided to Judge Tithonis prior to the case being called? To my recollection of the record is that this had been presented to him as a stipulation, and then at the hearing there was an uncertainty as to how they were proceeding, whether this was actually a guilty plea or if this was supposed to be a bench trial or exactly what was going on. And the trial judge recessed to get this whole thing straightened out as to exactly what the parties were intending. And then after the parties came back and said this is going to be a stipulated bench trial, we would stipulate that to the following facts, the following evidence. And then there's a list of the things the court can consider. The police reports, the doctor's reports, testimony, and then after the stipulation, the trial judge entered his findings. But you're saying that Judge Tithonis had sufficient opportunity to review those reports that were identified in the stipulation of Bass prior to rendering his decision? From my recollection of the record, yes. This had been presented, you know, the stipulation was presented to him, and then the day of the hearing there's confusion at Bass as to what's going on. And that's my recollection. If my memory has failed me, I apologize. With respect to the closing argument, case law says that if the court rules without argument and the defendant does not request argument, does not object, that there's been a waiver of closing argument and therefore no violation of the right to closing argument. I submit that is what has happened here. If this was a violation, it can be sent back to the same judge. The standard is that there has to be prejudice established based on something other than the court's rulings on the record. And what we have here is a ruling on the record that the defendant is saying was wrong, therefore a different judge should consider the case. That is simply not the standard. The defendant has referred to notes on the doctor's report as showing prejudgment or predisposition or that the judge defined as decided he was sane. But there's no showing that these are actually defined as notes. They could be the state's attorneys. They could be a clerk. They could be a clerk at the state's attorney's office. We don't know who wrote those notes. Those notes do not show any decision on the merits. They're ambiguous at best, just commenting on what does this particular phrase mean and referring to other parts of the test. That does not show that Judge Zafonis is biased or that he could not be fair and impartial at a future trial either by way of a further stipulation or by presenting the live testimony from Dr. Jekyll explaining his report further. So I do not think that the error in denying a closing argument requires remand for a different trial, Judge. Well, counsel, after the court announces its decision, says, Judge, I didn't get a chance to make a closing argument. And in response, the court says, all right, can we use Friday morning, February 12th at 9 o'clock for sentencing. What are we to make of that, that the court doesn't even respond to the counsel's suggestion that he should have been allowed to make a closing argument? It shows us that the trial judge did not think that that was a request for closing argument because what he said was, I want the record to reflect that the court did not afford counsel the part to make arguments following the BITS trial before the court reached its conclusion. When the court says, can we set the case, the defense counsel said, Judge, can we have argument now? That's one spin, I guess. Another might be that the court kind of thought, no, I don't want to hear any closing arguments. I don't need them. That would be a different spin, I guess. It could be interpreted that way, yes. Well, since I've already made my decision, then I'm going to let you make closing arguments? So the inference is, this is done, guys. We're going to do sentencing on the next date. That's the most reasonable inference. Yeah, that is a reasonable inference, yes. And with respect to the claim that the trial court could not consider his invocation of rights, there was no objection to that testimony at trial. So it was properly before him that he could consider it. Defense counsel was also right. He didn't mention it to anybody else. It says defense counsel was ineffective for not objecting to that testimony. I submit that that is a claim best left for a post-conviction hearing rather than trying to determine it here, because, one, we don't know why counsel did not object. Two, the counsel could have allowed the testimony in simply as information relied upon by his experts in reaching his conclusion, which would not be a violation of the rule that says you can't use defendant's exercise of his rights to show sanity. And, in addition, it's not altogether clear whether the rule would apply in this case. The rule is that the defendant's silence in response to Miranda warnings cannot be used to show sanity. We don't have silence here. We have the defendant making many different statements interspersed with his references to attorney. So I don't know that the rule would even apply in this case. So I think that this would be best left for a post-conviction rather than trying to determine it here. Are there no further questions? I don't see any. I think there is. All right. Thank you, Mr. Manson. Mr. McCarthy for a double argument. Yes. I'd like to start off with the last argument first. This definitely can't be breached at this time. You said for one reason he may have let it in was so the judge would know what the psychiatrist was relying on. Well, you can redact that. The psychiatrist can rely on what it's worth, which is nothing. There's absolutely no reason to have that information in front of the judge. Now, the judge does not have a right to know that information, not as the trier of fact. He doesn't have to make any ruling regarding the invocation of the rights because there was no motion to suppress. So there's no strategic reason to do it. And it definitely prejudiced my client because he relies on it, relies on it very heavily. Now, one last time I'm going to try to quickly do the sequence of events so we're all on the same page. Judge DeFantis calls the case. And before he called the case, what did he have in his possession? Nothing. After he calls the case, the prosecutor says, Your Honor, we have stipulations. Stipulate, finish trial. Walks up, hands the stipulations to Judge DeFantis. Judge DeFantis leaves the room, and that's when he sees the stipulation. They were going to allow him to stipulate not guilty by reason of insanity. And that's the first time he knew about that. That's the first time he saw the stipulations. So the only time he could have read that information was in that 15-minute window when they had the recess. And because he came back out and immediately made his ruling, he had already done his deliberations in 10 minutes. I don't think it's possible he considered all the stipulations because he had 125 cases worth of police reports. How do we know it was 15 minutes? He said a 15-minute recess. I don't know if the record actually... But he said the recess would be 15 minutes. Correct. And he did not have access to the psychiatric report prior to the parties or the attorneys approaching him with the possibility of a state agreement for a stipulated bench trial. Not the final one. He had access to two previous psychiatric reports that were based on the meetings on June 24th and July 2nd when he found that he was unfit for trial, but he had to look into a little more about whether he was insane. And he had access to the report on December 9th that described his meetings with Thomas on November 20th and December 2nd. But neither of those reports included his ultimate decision. What about the police reports? The police reports, I don't know for sure if he had access to them or not. There would be no reason to because there was no motion to suppress or anything like that. That would just be part of discovery. As far as I know, judges don't usually get discovery. So he would have no reason to have those police reports. Is there any questions? Thank you. All right. Thank you. Thank you both. The case will be taken under advisement. The decision is now issued.